UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | Criminal No. 23-177 (DWF/ECW) |
| Plaintiff, | |
| v. | ORDER ADOPTING REPORT AND RECOMMENDATION |
| Saul Rodriguez Pineda, | |
| Defendant. | |

## INTRODUCTION

Defendant Saul Rodriguez Pineda moves to suppress search and seizure evidence. (Doc. No. 16.)  In a Report and Recommendation ("R&R"), Magistrate Judge Elizabeth Cowan Wright recommended denying the motion.  (Doc. No. 40.)  Pineda filed an objection to the R&R.  (Doc. No. 42.)  After an independent review of the record and objection, the Court adopts the R&R.

## DISCUSSION

The Court has conducted a *de novo* review of the record, including a review of the arguments and submissions of counsel, pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.2(b).[1]  The relevant factual and procedural background for the above-entitled

---

[1] The Government asserts that the Court should apply the clear error standard because Pineda's objection is not specific and merely restates his original arguments. The Court's conclusion, however, is the same under either clear error or *de novo* review.

matter is clearly and precisely set forth in the Magistrate Judge's R&R and is incorporated by reference.

In the R&R, the Magistrate Judge came to two conclusions.[2] First, the Magistrate Judge concluded based on "the contemporaneous photos of the site and the testimony of Agent Fischbach and Officer Godfrey" that the first water cooler was found in the curtilage of the property, where the yard meets the woods, and searched pursuant to a valid search warrant.  (Doc. No. 40 at 14.)  The Magistrate Judge noted that Agent Fischbach and Officer Godfrey's testimony conflicted with the testimony of Private Investigator O'Keefe but concluded that O'Keefe's testimony was less persuasive because it "was based on his review of the Government's photographs and on the owner[] showing him where the hole was located a year after the search and after the owner filled in the hole."  (*Id.*)

Second, the Magistrate Judge concluded that the second water cooler was located in an open field and that Pineda did not have a legitimate expectation of privacy in the cooler.[3]  The Magistrate Judge noted that the cooler "bore no indicia of Pineda's ownership, had no locks, and w[as] not labeled with 'keep out' or any other words indicating [it] should not be opened."  (*Id.* at 20.)  Pineda did not own the property and

---

[2]   The Magistrate Judge also concluded that Pineda did not waive the open fields doctrine argument.  Neither party objects to this conclusion.  Upon review, the Court finds no clear error.

[3]   The Magistrate Judge further concluded that even if the first water cooler was in an open field, Pineda similarly did not have a legitimate expectation of privacy in that cooler for the same reasons as the second cooler.

2

"testified as to his concerns that the property owner or others would find the coolers." (*Id.* at 21.) Moreover, although Pineda attempted to conceal the cooler by covering it with brush and black plastic and partially encircling it with logs, the plastic, brush, and logs drew attention to the cooler's location, much like the concealed entryway in *Pennington*, "which was covered by a wooden pallet and next to a ventilation pipe." (*Id.* (citing *United States v. Pennington*, 287 F.3d 739, 745 (8th Cir. 2002).) Based on the circumstances, the Magistrate Judge concluded that Pineda did not have a reasonable expectation of privacy in the contents of the second water cooler.

Pineda objects to both conclusions. He notes that the police reports and property sheets stated that the water coolers were found "in the woods." (Doc. No. 42 at 2.) He further argues that the Magistrate Judge should have found the testimony of the property owner and O'Keefe to be more credible, as the property owner "knew better than anyone where the hole was located" and O'Keefe "had seen the location of the hole the day before he testified." (*Id.* at 3.) Pineda also objects to the Magistrate Judge's conclusion regarding the second water cooler. Pineda asserts that the Magistrate Judge's ruling "makes a mockery of this Circuit's binding precedent" and essentially holds that "no person has an expectation of privacy in the woods and fields." (*Id.*)

The Court begins with Pineda's objection regarding the first water cooler. Pineda has not presented any new arguments related to this issue. Rather, his above argument regarding the first water cooler's location is the same argument Pineda presented to the Magistrate Judge. The Magistrate Judge thoroughly considered this argument in the R&R and rejected it. The Magistrate Judge noted that in one report following the search,

3

an officer stated that "Agent Fischbach began looking in the wooded tree line area of the residence's backyard." (Doc. No. 40 at 12.) In another report, Officer Godfrey stated that he "was notified of a large orange water cooler that was located in the woods behind the residence." (*Id.*) At the hearing, the Government produced photos of the property taken around the time the search warrant was executed, showing the residence and the shed, "where Agent Fischbach had added markings indicating the locations of the water coolers." (*Id.* at 7.) The Magistrate Judge found that "Agent Fischbach's testimony align[ed] with" the photos. (*Id.* at 13.) And Officer Godfrey testified that "he saw the hole where the first water cooler had been found and considered the hole to be in 'the yard,' in contrast to the area where he found the second water cooler." (*Id.* at 13-14.)

O'Keefe visited the site prior to the hearing and took photos of the site. At the hearing, O'Keefe testified that while it was "a little difficult this time of year," he could see the line between the lawn and the woods and determined that the hole where the first water cooler was found was "on the wood[s] side." (*Id.* at 8-9.) The Magistrate Judge determined that the photos were of little help because they "were taken almost a year after the search in question, from the vantage point of looking into the woods from the lawn." (*Id.* at 14.) The Magistrate Judge also found O'Keefe's testimony to be less persuasive than "the contemporaneous photos of the site and the testimony of Agent Fischbach and Officer Godfrey." (*Id.*)

Having reviewed the case *de novo*, the Court agrees with the Magistrate Judge that photos taken around the time of the search are consistent with Agent Fischbach and Officer Godfrey's testimonies. While initial reports could have been more specific about

4

the location of each water cooler, the Court does not find the lack of specificity to undercut the credibility of Agent Fischbach or Officer Godfrey.  Their testimony and the contemporaneous photos indicate that the first cooler was found in the yard just next to the start of the heavily wooded area.  This evidence is more persuasive than testimony of O'Keefe who visited the property nearly a year after the search.  The Court therefore agrees with the Magistrate Judge that the first cooler was found in the curtilage of property and its search was authorized by the search warrant.

The next and final issue is whether Pineda had a legitimate expectation of privacy in the second cooler located in an open field behind the property.  The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches."  U.S. Const. amend. IV.  Fourth Amendment protections apply to items left in an open field only if the person has a legitimate expectation of privacy in that item.  To meet that burden, a person must establish that they (1) "asserted a subjective expectation of privacy in the place searched or object seized" and (2) that the "subjective expectation is objectively reasonable." *United States v. Douglas*, 744 F.3d 1065, 1069 (8th Cir. 2014) (internal quotations and citation omitted).

Again here, Pineda merely restates the argument he presented to the Magistrate Judge.  Pineda asserts that because the water cooler was covered by black plastic and brush, it was not in plain view and the officers had no right to search it.  Pineda argues that the Government cannot randomly start digging in open fields in hopes that it "get[s] lucky."  (Doc. No. 42 at 3.)

5

Pineda's argument, however, misses the mark.  The Government's search here was not random (nor did the officers have to dig to discover the coolers).  Officer Godfrey observed a brush pile, surrounded by logs placed in a U-shape.  Underneath the brush was "a black plastic garbage bag."  (Doc. No. 35 at 54.)  The brush, logs, and plastic were in plain view just as the "ventilation pipe protruding from the ground [and] a wooden pallet covering an entryway" were in plain view in *Pennington*.  *Pennington*, 287 F.3d at 745.  The plastic and brush pile were not located inside any sort of building or structure.  Nor was there any fence, gate, or "No Trespassing" sign.  Just as the officers in *Pennington* moved the wooden pallet to see behind it, officers removed the plastic covering, which revealed a water cooler.  The water cooler, like the bunker in *Pennington*, was "not visible from the surface," but the materials used to conceal the water cooler were visible and drew attention to the cooler's location.  *Id.*  Pineda did not have an expectation of privacy in the brush or plastic and thus the officers were able to remove the plastic without triggering the Fourth Amendment.

Further, the Court agrees with the Magistrate Judge, that Pineda did not have a reasonable expectation of privacy in the water cooler.  Pineda did not own the land where the cooler was found and therefore did not have means to restrict access to the cooler.  As the Magistrate Judge noted, the water cooler "bore no indicia of Pineda's ownership, had no locks, and [was] not labeled with 'keep out' or any other words indicating [it] should not be opened."  (Doc. No. 40 at 20.)  Because Pineda did not have a reasonable

expectation of privacy in the water cooler, the officers were able to lawfully search the cooler without a warrant.[4]  The Court therefore denies Pineda's motion to suppress.

### ORDER

Based upon the foregoing, and the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Pineda's objection (Doc. No. [42]) to Magistrate Judge Elizabeth Cowan Wright's December 4, 2023, Report and Recommendation is **OVERRULED**.

2. Magistrate Judge Elizabeth Cowan Wright's December 4, 2023, Report and Recommendation (Doc. No. [40]) is **ADOPTED**.

3. Pineda's motion to suppress search and seizure evidence (Doc. No. [16]) is **DENIED**.

Dated:  January 24, 2024            s/Donovan W. Frank
                                    DONOVAN W. FRANK
                                    United States District Judge

---

[4] The same analysis would apply to the first water cooler if it were not located in the curtilage of the home.